UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LARRY ANGLIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO. 3:10-CV-321 PS |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Larry Anglin, a *pro se* prisoner, is serving a 60-year sentence for multiple counts of child molestation committed in Kosciusko County. *Anglin v. State*, No. 43C01-0303-FA-19. He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) The respondent argues that the petition is untimely. (DE 15.)

**I.    FACTS**

In deciding this habeas petition, I must presume the facts set forth by the state court are correct. 28 U.S.C. § 2254(e)(1). It is Anglin's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals summarized the facts underlying Anglin's convictions as follows:

> Anglin is the stepfather of N [a female], born July 6, 1993, and M [a male], born June 14, 1994. N and M resided primarily with their father, Allen Carey, but spent every weekend with their mother and Anglin. Between January 1, 1999, and September 17, 2002, Anglin repeatedly molested N and M by fondling or touching their genitals and having them fondle or touch his genitals. Anglin engaged in vaginal intercourse with N and performed and submitted to oral intercourse with N. Anglin also performed and submitted to oral intercourse with M. In September 2002, N and M informed Carey of Anglin's molestations.
>
> On September 17, 2002, Carey reported the molestations to a family case manager at the Kosciusko County Division of Family and Children. On October 2, 2002, the case manager and a state trooper interviewed N and M individually. Both children

> stated that Anglin had molested them. State Police Detective Steve Nash interviewed Anglin's neighbor, Danielle McDonald, who later testified that Anglin had told her "he could get [her] wet and he knew that because he got [N] wet and for a nine year old she would get as wet as grown woman." On December 30, 2002, Detective Nash visited Anglin at his home and asked him, "if, in his opinion, [N and M] had been molested or if they were making this up." Anglin denied the allegations and agreed to take a polygraph exam on January 8, 2003, at the Indiana State Police post in Bremen. Anglin arrived at the appointed time and, after signing a waiver-of-rights form, confessed on videotape to molesting N and M. Anglin did not take the polygraph exam and was not arrested at that time.
>
> On March 6, 2003, the State charged Anglin with seven counts of child molesting, five as class A felonies and two as class C felonies. On July 22, 2003, Anglin filed a motion to suppress his videotaped statements, asserting that they were "obtained as a result of misleading [him] about his constitutional and statutory rights, including but not limited to the right against self-incrimination . . . ." The trial court denied Anglin's motion. At trial, Anglin's videotaped confession was admitted into evidence over his objection. On September 17, 2003, the jury found Anglin guilty as charged.

*Anglin v. State*, No. 43A05-0311-CR-574 (Ind. Ct. App. Oct. 13, 2004), slip op. at 2-3 (internal citations and footnotes omitted). On October 28, 2003, the trial court sentenced Anglin to an aggregate term of 60 years in prison. *Id.* at 3-4.

Anglin appealed, raising the following arguments: 1) the trial court erred in admitting his videotaped statement; 2) the trial court improperly imposed consecutive sentences; and 3) the evidence was insufficient to support the convictions. (DE 14-2 at 5.) The Indiana Court of Appeals affirmed. *Anglin v. State*, No. 43A05-0311-CR-00574, slip op. at 4-12. Anglin filed a petition to transfer, challenging only his sentence and the admission of his videotaped statement. (DE 14-5 at 3.) The Indiana Supreme Court denied his petition on December 16, 2004. (DE 14-1 at 4.) Anglin did not seek review in the United States Supreme Court. (DE 1 at 1.)

In November 2004, prior to the conclusion of direct review proceedings, Anglin filed a post-conviction petition in state court. *Anglin v. State*, No. 43A05-0712-PC-733 (Ind. Ct. App.

2

Dec. 1, 2008), slip op. at 2. In the post-conviction proceedings Anglin raised claims of judicial bias, prosecutorial misconduct, and ineffective assistance of trial and appellate counsel on various grounds. *Id.* at 4-5. Following an evidentiary hearing at which the only evidence presented was Anglin's own testimony, the trial court denied the petition. *Id.* at 2. Anglin appealed, and the Indiana Court of Appeals affirmed. *Id.* at 2-8. The Indiana Supreme Court denied his petition to transfer on February 5, 2009. (DE 14-6 at 4.)

In the midst of the state post-conviction proceedings, in January 2007, Anglin filed the first of three federal habeas corpus petitions. *See Anglin v. State*, No. 3:07-CV-007-RM (N.D. Ind. filed Jan. 5, 2007). In that petition he raised claims of ineffective assistance of counsel, prosecutorial misconduct, judicial bias, and police misconduct. *Id.*, DE 1. The court dismissed the petition without prejudice in September 2007 so that Anglin could finish exhausting his state court remedies. *Id.*, DE 22.

After the state post-conviction proceedings came to a conclusion in February 2009, Anglin returned to federal court with a second federal habeas petition. *See Anglin v. State*, No. 3:09-CV-168-RL (N.D. Ind. filed April 16, 2009). In that petition he raised the following claims: (1) his videotaped statement had been improperly edited and was thus inadmissible; (2) the trial judge was biased against him and should have recused himself; (3) the minor victims lied on the stand; and (4) he was denied due process when the trial judge denied his motion "for a complete physical exam on both victims." *Id.*, DE 1 at 5-10. During briefing, Anglin filed a motion asking to "pull" his federal petition so that he could return to state court and allow the state an opportunity to "clean up its own mistakes." *Id.*, DE 25. In March 2010, after determining that

3

Anglin was not entitled to a stay under *Rhines v. Weber*, 544 U.S. 269 (2005),[1] the court granted Anglin's motion and dismissed the petition without prejudice. *Id.*, DE 23, 26. Thereafter, Anglin sought leave in the Indiana Court of Appeals to file a successive post-conviction petition, but his request was denied. (DE 14-13.)

In August 2010, Anglin returned to federal court with the present petition. He raises four claims: (1) the trial judge improperly took evidence out of the courthouse to view in connection with a motion to suppress; (2) the trial judge was biased against him; (3) the jury was "tainted" because one juror was molested as a child and two others were "close to" someone who had been molested; and (4) he was denied a fair trial by excessive pretrial publicity. (DE 1 at 3-4.)

## II. ANALYSIS

The respondent argues that Anglin's petition is untimely. (DE 15 at 6-10.) I agree. Anglin's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA contains a strict one-year statute of limitations, stated as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] Under *Rhines v. Weber*, 544 U.S. 269, 271 (2005), a court has discretion to stay a "mixed" petition—one containing both exhausted and unexhausted claims—to allow the petitioner time to exhaust the unexhausted claims in state court; when he has completed this process he can then "return to federal court for review of his perfected petition."

4

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Anglin's claims do not implicate newly discovered evidence or a newly recognized constitutional right, nor does he claim that a state-created impediment prevented him from filing his federal petition on time. (*See* DE 1 at 5.) Accordingly, the provisions of 28 U.S.C. § 2244(d)(1)(A) apply. On direct review, the Indiana Supreme Court denied his petition to transfer in December 2004, and his conviction became final when the time for seeking review in the United States Supreme Court expired 90 days later. *See Powell v. Davis*, 415 F.3d 722, 726 (7th Cir. 2005). Ordinarily the one-year statute of limitations would begin running on that date, but Anglin initiated state post-conviction proceedings before his conviction became final. As such, the limitations period was tolled under 28 U.S.C. § 2244(d)(2) and did not begin running until the state post-conviction proceedings came to a conclusion in February 2009. At that point, Anglin had one year—until February 2010—to seek federal habeas relief. 28 U.S.C. § 2244(d)(1)(A). Absent any additional period of tolling, this petition filed in August 2010 was late by several months.

As stated above, Anglin had a federal habeas petition pending from April 2009 to March 2010. However, a federal petition does not toll the limitations period under 28 U.S.C. § 2244(d)(2), as that provision only applies to applications for collateral relief filed in state court.[2] *Tucker v. Kingston,* 538 F.3d 732, 733 (7th Cir. 2008). The deadline also was not tolled during the time Anglin sought leave to file a successive post-conviction in state court, since the Indiana Court of Appeals declined to authorize the filing of a successive petition. *Powell*, 415 F.3d at 726-27.

Anglin has not provided any basis for excusing the untimeliness of his petition, and instead appears to believe his petition is timely. When asked to explain why his petition is timely under the provisions of 28 U.S.C. § 2244(d), he states as follows:

> Well I had to exhaust all of my state remedies before I could get a federal hearing. I have tried twice and had to go back and finish them. It is a waste of time and money to go to the state courts, because they flat don't care who is innocent or who is guilty. In my opinion all Indiana care[s] about is the almighty dollar and see how many marr[i]ages the[y] can break up. I'm sorry, but it is my opinion.

(DE 1 at 5.) Anglin filed a traverse in support of his petition, but he does not respond to the state's timeliness argument and instead focuses on the merits of his claims. (DE 24.) Based on the record, it is apparent that Anglin's current petition was not filed within one year of the date his conviction became final.

The respondent nevertheless recognizes that Anglin's petition filed in 2009 was timely. (*See* DE 15 at 10.) If the 2009 petition should have been stayed rather than dismissed outright, Anglin's current petition could be considered an "amendment" to the earlier petition. (*Id.*) As the

---

[2] Anglin's first petition filed in 2007 has no relevance for purposes of the statute of limitations, since the deadline for filing a federal petition did not begin to run until the state post-conviction proceedings came to a conclusion in 2009.

respondent points out, under limited circumstances an untimely amendment to a pleading may be deemed to "relate back" to an earlier, timely filed pleading. FED. R. CIV. P. 15(c); *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). This doctrine is narrowly applied in the habeas context in light of the strict deadlines imposed by AEDPA. *Mayle*, 545 U.S. at 662. To relate back, a claim raised in an untimely habeas petition must be based on the same "common core of operative facts" as a claim raised in the timely filed petition. *See id.* at 660-61. In essence, the claims must be based on the same grounds, and it is not sufficient that the claims arise out of the same "trial, conviction, or sentence." *Id.* at 664; *see also Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) (untimely habeas petition related back to timely filed petition where the two petitions were "substantively identical").

Here, Anglin has abandoned all but one of the claims raised in the 2009 petition, the judicial bias claim. The other claims he raises regarding the trial judge's removal of evidence from the courthouse, jury bias, and excessive pretrial publicity are based on entirely different facts than the claims raised in the earlier petition.[3] Even if relation back principles were applied to this case, only the judicial bias claim could conceivably relate back to the timely filed petition.

If I were to reach the judicial bias claim on the merits, it would fail in any event. AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). I am permitted to

---

[3] With the exception of the judicial bias claim, the claims raised in the current petition are also distinct from the claims raised in the 2007 petition, which Anglin filed prior to the completion of the state judicial process. *See Anglin,* No. 3:07-CV-007-RM, DE 1.

grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, — U.S.—, 131 S. Ct. 770, 786 (U.S. Jan. 19, 2011).

Anglin raised a claim of judicial bias on post-conviction review, arguing that the judge was biased and should have recused himself. *Anglin*, No. 43A05-0712-PC-733, slip op. at 3. In essence, Anglin claimed that the judge was biased because he made numerous adverse rulings against him at trial. *Id.* The appellate court rejected this argument, concluding that these adverse rulings did not demonstrate impermissible bias. *Id.* at 4. The respondent argues that this was not an unreasonable application of Supreme Court precedent. (DE 15 at 12-13.) I agree.

"A fair trial in a fair tribunal is a basic requirement of due process." *Caperton v. A.T. Massey Coal, Inc.*, —U.S.—, 129 S. Ct. 2252, 2259 (U.S. 2009) (internal citation omitted). Most matters relating to judicial disqualification do not "rise to a constitutional level," but recusal is required when the judge has "a direct, personal, substantial, [or] pecuniary interest" in the case. *Id.* Thus, due process requires recusal when the judge has a financial stake in the outcome of the case or has a conflict arising from his participation in an earlier proceeding. *Id.* at 2259-60. However, "not every attack on a judge disqualifies him from sitting," *id.* at 2262, and adverse judicial rulings alone do not establish the type of bias requiring recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Here, Anglin's claim is premised on the judge's adverse rulings, including that the judge refused to "let [him] out of jail" on his own recognizance prior to trial. (DE 24 at 9.) These rulings do not establish the type of bias that would rise to the level of a due process violation. *See Caperton,* 129 S. Ct. at 2259; *Liteky*, 510 U.S. at 555. Anglin also points to a comment the judge made after he requested that the judge recuse himself, specifically, that "he had started this case and he was going to finish it and that he was not bias[ed] or pre[judiced]." (DE 1 at 3.) Anglin also objects to the judge's comment, made in the context of deciding his motion for

release pending trial, that he posed a risk of committing an offense if released from jail. (DE 24 at 9.) "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless the comments demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. 540 at 555. The comments Anglin points do not come anywhere close to meeting that standard. The state court's rejection of Anglin's judicial bias claim was not unreasonable and, accordingly, the claim is denied.

As a final matter, pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, I must either issue or deny a certificate of appealability in all cases where I enter a final order adverse to the petitioner. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). When I dismiss a petitioner's claim on procedural grounds without reaching the merits, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether I was correct in my procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* Each is a threshold inquiry; thus, I need only address one component if that particular component will resolve the issue. *Id.* at 485.

As is fully explained above, Anglin's petition is untimely. Nothing before me suggests that jurists of reason could debate the correctness of this procedural ruling or find a reason to encourage Anglin to proceed further. Assuming the judicial bias claim could be decided on the merits, Anglin has fallen far short of establishing the denial of a constitutional right, and there is nothing before me to suggest that jurists of reason could debate the outcome of this claim. Accordingly, I decline to issue Anglin a certificate of appealability.

For these reasons, the court **DENIES** the petition (DE 1) and **DECLINES** to issue a certificate of appealability.

**SO ORDERED**
.

ENTERED: April 18, 2011.

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT